**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

**MARIAN H.[1],**

      **Plaintiff,**

                              **Civil Action 3:24-cv-00050**

**v.**                         **Magistrate Judge Elizabeth P. Deavers**

**COMMISSIONER OF
SOCIAL SECURITY,**

      **Defendant.**

**OPINION AND ORDER**

Plaintiff, Marian H., brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for social security disability insurance benefits and supplemental security income. This matter is before the Court for disposition based upon Plaintiff's Statement of Errors (ECF No. 8), the Commissioner's Memorandum in Opposition (ECF No. 10), Plaintiff's Reply (ECF No. 11), and the administrative record (ECF No. 7). For the reasons that follow, the Court **REVERSES** the Commissioner of Social Security's nondisability finding and **REMANDS** this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

## I.    BACKGROUND

Plaintiff protectively filed her applications on July 16, 2021, alleging that she has been disabled since April 16, 2021, due to degenerative disc disease, two discs removed in C-spine, bulging disc in her lumbar spine, high blood pressure, severe asthma, anxiety, tuberculosis, myalgia, arthritis in back and in her right ankle, and severe stress PTSD.  (R. at 197-205, 209-10, 228.)  Plaintiff's applications were denied initially in January 2022 and upon reconsideration in July 2022.  (R. at 69-116, 126-45.)  Plaintiff sought a *de novo* hearing before an administrative law judge.  (R. at 146-67.)  Plaintiff, who was represented by counsel, appeared and testified at a hearing held on January 31, 2023.  (R. at 40-68.)  A vocational expert ("VE") also appeared and testified.  (*Id.*)   On March 16, 2023, Administrative Law Judge Heidi Southern (the "ALJ") issued a decision, finding that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 12-39.)   The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision.  (R. at 1-6.)  This matter is properly before this Court for review.

## II.    RELEVANT RECORD EVIDENCE

The Court has thoroughly reviewed the transcript in this matter, including Plaintiff's medical records, function and disability reports, and hearing testimony as to Plaintiff's conditions and resulting limitations. Given the claimed error raised by Plaintiff, rather than summarizing that information here, the Court will refer and cite to it as necessary in the discussion of the parties' arguments below.

## III.    ADMINISTRATIVE DECISION

On March 16, 2023, the ALJ issued her decision.  (R. at 12-39.)  The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2026.  (R. at 18.)  At step one of the sequential evaluation process,[2] the ALJ found that Plaintiff has not engaged in substantial gainful activity since April 16, 2021, the alleged onset date.  (*Id.*) The ALJ found that Plaintiff has the severe impairments of degenerative disc disease, right hip labral tear, myalgias, brachial plexus disorder, intercostal neuralgia, asthma, varicose veins, hypertension, obesity, depressive disorder, anxiety disorder, post-traumatic stress disorder, and cannabis use disorder.  (*Id.*)  The ALJ further found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 19.)

Before proceeding to Step Four, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. § 404.1520(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

3

> After careful consideration of the entire record, the [ALJ] finds that [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following exceptions: No more than frequent balancing. No more than occasional stooping, kneeling, crouching, crawling, or climbing of ramps and stairs. No climbing of ladders, ropes, or scaffolds. [Plaintiff] should avoid concentrated exposure to extreme heat, extreme cold, humidity, wetness, and atmospheric conditions, as defined in the Selected Characteristics of Occupations, as published by the U.S. Department of Labor (S.C.O.). No exposure to hazards such as unprotected heights or moving mechanical parts. No requirement to perform commercial driving as part of job duties. [Plaintiff] is unable to perform at a production-rate pace, as would be required for assembly line work, but can perform goal-oriented work, such as office cleaner positions. No more than occasional and superficial contact, as defined, with supervisors, co-workers, and the general public. No teamwork, tandem tasks, conflict resolution, over-the-shoulder supervision, or persuasion of others. No more than occasional changes in an otherwise routine work setting, explained in advance to allow time for adjustment to new expectations.

(R. at 22.)

At step four of the sequential process, the ALJ determined that Plaintiff is unable to perform her past relevant work as a telephone representative, billing clerk, salesclerk, sign erector II, and office clerk.  (R. at 30.)  The ALJ determined at step five of the sequential process that Plaintiff would be able to perform the requirements of representative occupations such as merchandise marker, final inspector, or a mailroom clerk.  (R. at 31.)  She therefore concluded that Plaintiff has not been disabled since April 16, 2021.  (R. at 32.)

## IV.   STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices the claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## V.    ANALYSIS

Plaintiff raises two claimed errors: (1) the ALJ erred in ***every*** aspect of her consideration of ***every*** medical source opinion of record; and (2) the ALJ failed to reasonably account for

Plaintiff's chronic sinus impairment.  For the following reasons, the Court agrees that the ALJ erred in her consideration of the opinion of Jonathan E. Silverman, M.D.  In short, it does not appear that substantial evidence supports the ALJ's conclusion that Dr. Silverman's opinion is only minimally persuasive.  This finding obviates the need for in-depth analyses of Plaintiff's remaining issues.  Thus, the Court need not, and does not, resolve the alternative bases that Plaintiff asserts support reversal and remand.  Nevertheless, on remand, the ALJ may consider Plaintiff's other arguments if appropriate.

The starting point for the Court's analysis is the ALJ's discussion of Dr. Silverman's opinion.  To that point, the ALJ had this to say about the opinion:

> The [ALJ] is only minimally persuaded by Dr. Silverman's opinion, as given in a Medical Impairment Questionnaire Regarding Illnesses, Physical Abilities and Limitations (Exhibit 27F). As with Dr. Sinnathamby, Dr. Silverman could have keen and significant insight into [Plaintiff]'s physical abilities and limitations. His recommendations, such as a limitation to standing for no more than fifteen minutes, sitting for thirty minutes, and lifting ten pounds, as well as a limitation to just two hours total working per day, is inconsistent with the broader medical record, including Dr. Silverman's own treatment notes, and with [Plaintiff]'s subjective complaints. As noted above, [Plaintiff] stated in the function report that she can walk for approximately an hour at a time (see Exhibits 3E, 4E), and testified to being able to lift up to twenty pounds. Dr. Silverman's treatment notes indicate a lack of muscle weakness and joint pain, along with a normal gait (see, for example, Exhibit 23F at 60, 78). [Plaintiff] has also obtained a gym membership and attempted to be more active (see Exhibit 24F at 110), which indicates a significantly higher level of functioning that that suggested by Dr. Silverman. In addition, nothing in the record supports the levels of off-task time or absenteeism suggested by Dr. Silverman, nor does he provide a narrative explanation for them. Finally, Dr. Silverman opined on a matter reserved to the Commissioner regarding the ultimate matter at issue in this decision.

(R. at 29.)

6

Under the current regulations, an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [Plaintiff]]'s medical sources." 20 C.F.R. § 404.1520c(a). Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with [Plaintiff]]"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability programs policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c)(1)–(5).

The regulations emphasize that "the most important factors [that the ALJ and Commissioner] consider when [ ] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id.* at §§ 404.1520c(a), 416.920c(a).

The applicable regulations further require the ALJ to articulate his "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination or decision how persuasive he find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id.* at §§ 404.1520c(b), 416.920c(b). Specifically, the ALJ must explain how he considered the 'supportability' and 'consistency' factors for a medical source's opinion and ALJ may—but is not required to— explain how he considered the remaining factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). As to the supportability factor, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his

or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(1), 416.920c(c)(1). As to the consistency factor, the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2). However, "[b]ecause many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for [the ALJ] to articulate in each determination or decision how he considered all of the factors for all of the medical opinions and prior administrative medical findings in [the claimant's] case record." 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1).

As for the myriad ways he alleges the ALJ erred, Plaintiff first contends that the ALJ's discussion significantly mischaracterizes and otherwise makes unreasonable findings regarding the record.  (ECF No. 8 at 12.)  For example, Plaintiff takes issue with the ALJ's finding of inconsistency between Dr. Silverman's opinion that Plaintiff can only stand for fifteen minutes and Plaintiff's own function report stating that she can "walk for approximately an hour."  In Plaintiff's view, standing and walking are distinct activities.  Plaintiff also argues that the ALJ failed to consider that her function report, as it related to walking at least, was expressly conditioned on the absence of an asthma flare-up.  (*Id.* at 12.)  Further, Plaintiff asserts that the ALJ should have given more weight to Plaintiff's own function reports and testimony which are more consistent with Dr. Silverman's report.  (*Id.* at 12-13.)  Plaintiff also contends that the ALJ

incorrectly concluded that Dr. Silverman's own treatment notes were inconsistent with his opinion, especially the ALJ's conclusion that Dr. Silverman fails to document Plaintiff's joint pain.  (*Id.* at 13-14.)  Plaintiff also specifically takes issue with the ALJ's finding that her testimony that she could lift up to 20 pounds one time and then do so again after an hour is inconsistent with Dr. Silverman's opinion that she could lift up to ten pounds on an occasional basis and up to five pounds on a frequent basis.  Next, Plaintiff argues that the ALJ should not have considered her gym membership and increased activity as an inconsistency.  (*Id.* at 4-15.) Plaintiff additionally argues that the ALJ erred in stating that Dr. Silverman did not provide narrative explanation for the off task and absenteeism portions of the opinion.  (*Id.* at 15.) Finally, Plaintiff faults the ALJ for noting that a portion of Dr. Silverman's opinion was on a matter reserved to the Commissioner.  (*Id.* at 15-16.)

Only one of Plaintiff's multiple complaints merits discussion:  the ALJ erroneously concluded that Dr. Silverman's own treatment notes did not support his opinion.  As the excerpt above confirms, the very limited extent of the ALJ's discussion on this point is that "Dr. Silverman's own treatment notes indicate a lack of muscle weakness and joint pain, along with a normal gait.  (see, for example Exhibit 23F at 60, 78.)"  (R. at 29.)

Substantial evidence does not support this explanation.  Dr. Silverman's treatment notes clearly reflect Plaintiff's joint pain.  Specifically, his notes dated September 9, 2022, and relied upon by the ALJ (R. at 29 citing R. at 1439) indicate positive tenderness to palpation of the right

sacroiliac joint, positive right side FABER testing,[3] and positive right side Gaenslen's testing.[4] (R. at 1439.)   Consistent with these results, Dr. Silverman's assessment, *inter alia*, was sacroiliac joint dysfunction of the right side.  (*Id*.)  As a result, he recommended that Plaintiff proceed with a right sacroiliac joint injection.  (*Id*.)  Thus, despite the ALJ's statement that Dr. Silverman's notes fail to indicate Plaintiff's joint pain, the record demonstrates this not to be so. Based on this, it appears the ALJ mischaracterized the evidence regarding Dr. Silverman's notes regarding Plaintiff's joint pain.  Given this mischaracterization, the Court cannot conclude that the ALJ's supportability and consistency determination is supported by substantial evidence.  *See Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (remand required, in part, because the ALJ was "selective in parsing the various medical reports"); *Ackles*

---

[3]The test is performed by placing the patient in the supine position and then flexing one leg and placing the foot of that leg on the opposite knee. The tester then slowly presses down on the superior aspect of the tested knee joint lowering the leg into further abduction. The motion performed as part of this test is referred to as FABER - **F**lexion, **AB**duction, **E**xternal **R**otation at the hip. The results are positive if the patient experiences "pain at the hip or sacral joint, or if the leg can not lower to point of being parallel to the opposite leg."   *Hockey v. Comm'r of Soc. Sec*., No. 1:17-CV-796, 2018 WL 4374977, at *4 (W.D. Mich. May 23, 2018), *report and recommendation adopted*, No. 1:17-CV-796, 2018 WL 3737945 (W.D. Mich. Aug. 7, 2018) (citing http://physicaltherapy.about.com/od/orthopedicsandpt/ss/LEspecialtests_2.htm).  Stated another way, the FABER test, is "a clinical pain provocation test to assist in diagnosis of pathologies at the hip, lumbar and sacroiliac region." *Carter v. Saul*, No. 2:20-CV-10863, 2021 WL 1725522, at *3 (E.D. Mich. Mar. 17, 2021*), report and recommendation adopted sub nom. Carter v. Soc. Sec. Comm'r*, No. 220CV10863TGBKGA, 2021 WL 1720832 (E.D. Mich. Apr. 30, 2021) (citing https://physio-pedia.com/FABER_Test).

[4] Gaenslen's Test is used to detect musculoskeletal abnormalities and primary-chronic inflammation of the lumbar vertebrae and sacroiliac joint.  *Butler v. Saul*, No. 5:20-CV-00082-LLK, 2021 WL 1225959, at *3 (W.D. Ky. Mar. 31, 2021) (citing; https://www.physio-pedia.com/Gaenslen_Test).

*v. Colvin*, No. 3:14cv00249, 2015 WL 1757474, at *6 (S.D. Ohio Apr. 17, 2015) ("The ALJ did not mention this objective evidence and erred by selectively including only the portions of the medical evidence that placed Plaintiff in a capable light."); *Johnson v. Comm'r of Soc. Sec.*, No. 2:16-cv-172, 2016 WL 7208783, at *4 (S.D. Ohio Dec. 13, 2016) ("This Court has not hesitated to remand cases where the ALJ engaged in a very selective review of the record and significantly mischaracterized the treatment notes.").

In the face of this, the Commissioner argues that the ALJ's point was not that Plaintiff had no pain but that Dr. Silverman's records were inconsistent with the rather extreme functional limitations set forth in his opinion. (ECF No. 10 at 8-9.) This assertion is belied by the ALJ's own language. Thus, the Commissioner's argument is really a request that this Court affirm the ALJ's decision based on *post hoc* rationalizations instead of the "basis articulated by the [ALJ herself]." *Johnson v. Comm'r of Soc. Sec.*, 193 F.Supp.3d 836, 847 (N.D. Ohio 2016) (citing *Berryhill v. Shalala*, 4 F.3d 993 (6th Cir. 1993)); *see, e.g.*, *Stepp v. Comm'r of Soc. Sec.*, No. 2:18-cv-641, 2019 WL 3369147, at *6 (S.D. Ohio July 26, 2019) (rejecting a similar argument as a "*post hoc* rationalization" and collecting cases), *report and recommendation adopted*, No. 2:18-cv-641, 2019 WL 3804706 (S.D. Ohio Aug. 13, 2019). The Court cannot do so.

On remand, the ALJ may ultimately reach the same conclusion regarding the evidentiary weight to be afforded Dr. Silverman's opinion. But the ALJ is required to explain with sufficient detail how she evaluated the supportability for each medical opinion. On this record, the Court simply cannot understand the ALJ's supportability analysis of Dr. Silverman's opinion. Therefore, remand is required.

## VI.    CONCLUSION

Based on the foregoing, Plaintiff's Statement of Errors (ECF No. 8) is **SUSTAINED.**
The decision of the Commissioner is therefore **REVERSED** and this action is **REMANDED** to
the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g), for further administrative
proceedings. The Clerk is **DIRECTED** to enter **FINAL JUDGMENT** in this case pursuant to
sentence four of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

**Date: March 10, 2025**                    *s/ Elizabeth A. Preston Deavers*
                                          **ELIZABETH A. PRESTON DEAVERS**
                                          **UNITED STATES MAGISTRATE JUDGE**

12